UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Scott D. Sager, *on behalf of himself and all others similarly situated*,<br><br>    Plaintiff,<br> v.<br><br>Volkswagen Group of America, Inc., and Audi of America, Inc.,<br><br>    Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Scott D. Sager, by undersigned counsel, brings the following complaint against Volkswagen Group of America, Inc., and Audi of America, Inc., and alleges, on his own behalf and on behalf of all those similarly situated, as follows:

## INTRODUCTION

1. Plaintiff Scott D. Sager ("Sager") brings this lawsuit against Volkswagen Group of America, Inc., and Audi of America, Inc. (collectively the "Defendants" or "VW-Audi") on his own behalf and on behalf of a proposed class of present owners and lessees of the following vehicles: 2013-2017 A4 sedan and Allroad, 2013-2017 A5 coupe and cabriolet, 2012-2015 A6 and 2013-2017 Q5 crossover SUV equipped with the 2.0-liter turbocharged four-cylinder type "EA888 Evo2" engine (the "Class Vehicles").

2. The coolant pump in the Class Vehicles' engines was defectively designed and/or manufactured.

3. VW-Audi acknowledged this safety defect, which may lead to a potential vehicle fire where debris can get lodged inside the coolant pump and cause it to short-circuit, or where moisture within the pump could cause the pump to short-circuit. In either case a short-circuiting coolant pump increases the chance of a vehicle fire.

4. Although VW-Audi issued a safety recall and notified Class Vehicles' owners and lessees to park Class Vehicles outdoors, VW-Audi do not have the parts available to remedy this safety defect and instructed their dealers to stop all Class Vehicles sales.

5. According to VW-Audi, 342,867 vehicles are equipped with such defective coolant pumps and are on the public streets, all at risk of fire.

6. Plaintiff, on his own behalf and on behalf of a proposed class, seeks damages related to the Class Vehicles' defective coolant pumps and Defendants' failure to honor the terms of their warranty.

## PARTIES

7. The Plaintiff Scott D. Sager is an adult individual residing in Wayne, New Jersey.

8. Defendant Volkswagen Group of America, Inc., is a Michigan corporation with a principal place of business at 3800 Hamlin Road, Auburn Hills, Michigan 48326.

9. Defendant Audi of America, Inc., is a subsidiary of Defendant Volkswagen Group of America, Inc., and also is a Michigan corporation with a principal place of business at 3800 Hamlin Road, Auburn Hills, Michigan 48326.

10. At all relevant times, Defendants were engaged in the business of marketing, supplying, and selling motor vehicles accompanied by written warranties to the public at large through a system of authorized dealerships.

11. Defendants engage in continuous and substantial business in New Jersey.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of

interest and costs, and (iii) there is minimal diversity because Plaintiff and Audi are citizens of different states. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff presents a claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* As to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

13. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District and Defendants are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

### Allegations Applicable to Plaintiff Sager

14. On or about August 3, 2018, Plaintiff purchased a 2013 Audi Allroad vehicle, Vehicle Identification Number WA1UFAFL5DA223216 (the "Vehicle") in Verona, New Jersey.

15. Soon after purchasing the Vehicle, Sager discovered that his Vehicle is subject to the VW-Audi recall for defective coolant pumps.

16. Sager thereafter contacted a local VW-Audi authorized dealer and requested it to perform the aforementioned recall, but the dealer told Sager that it was unable to perform a recall since no replacement pumps were available and such part would not be available for several months. The dealer further advised Sager that he should not be driving the Vehicle until a coolant pump in the Vehicle is replaced with a new and improved pump.

17. Safer then asked the VW-Audi dealer for a loaner vehicle until the Vehicle is repaired, but was told that VW-Audi would not authorize a loaner vehicle and one will not be provided.

**The Coolant Pump Defect**

18.     Defendants Volkswagen Group of America, Inc. and Audi of America, Inc, are the manufacturers, distributors, and warrantors of all Class Vehicles sold and leased within the United States.

19.     Class Vehicles are equipped with defective electric coolant pumps that are at risk of short circuiting and/or overheating as a result of debris getting lodged inside the coolant pump, or moisture accumulating within the pump.  A short-circuit or overheating within the electric coolant pump may lead to a fire resulting in vehicle or other property damage.

20.     VW-Audi have been aware of this safety defect at least since December of 2016 and, at first, attempted to remedy it by conducting a 19M1 recall wherein they instructed their authorized dealers to reprogram the engine control unit software in the Class Vehicles.

21.     However, the 19M1 recall failed to fix this safety defect and in April of 2018 VW-Audi issued a second 19N3/19N4 recall.

22.     The 19N3/19N4 recall aims to replace the coolant pump in the Class Vehicles with a new and improved pump equipped with a pressure compensation element to avoid moisture accumulation.

23.     However, VW-Audi do not have the new and improved pumps available and do not anticipate having them available until November 2018.

24.     Recognizing the severity of this safety defect, VW-Audi instructed their authorized dealers to stop all sales of the Class Vehicles and to quarantine their inventory of Class Vehicles until the 19N3/19N4 recall is implemented.

25.     In addition, beginning on June 11, 2018, VW-Audi sent a letter to Class Vehicles owners and lessees recommending that they park their vehicles outdoors and away from

buildings or other things that can burn (like dry grass or trees) to help prevent a fire from spreading.

26. Despite recognizing the severity of this safety defect, VW-Audi refused to provide free loaners to affected Class Vehicles owners and lessees while the replacement coolant pump is unavailable.

27. In addition, VW-Audi failed to categorically acknowledge that Class Vehicles, which are at risk of fire, are not safe to drive and, instead, instructed their authorized dealers to tell the Class Vehicles owners and lessees that they "may continue to drive the vehicle normally."

28. The Defendants have neglected, failed, refused or otherwise been unable to repair the defective coolant pumps in the Class Vehicles within a reasonable period of time.

29. The defects experienced by the Plaintiff and members of the Class substantially impair the use, value and safety of the Class Vehicles to the Plaintiff and members of the Class.

30. The Plaintiff and members of the Class could not reasonably have discovered said nonconformities with the Class Vehicles prior to their acceptance of the Class Vehicles.

31. The Plaintiff and members of the Class would not have purchased or leased the Class Vehicles had they known, prior to the respective times of purchase or lease, that the Class Vehicles were unsafe to drive because of a risk of catching fire.

## TOLLING OF STATUTES OF LIMITATIONS

32. Plaintiff and members of the Class did not and could not have known that there was a defect with the Class Vehicles' respective coolant pumps at the time that they purchased or leased the Class Vehicles or any time thereafter, that puts the vehicles at risk of catching fire.

33. Despite their acknowledgment of the serious safety defect, VW-Audi continue to inform the owners and lessees of the Class Vehicles that such vehicle can be driven normally, while at the same time Defendants warn owners not to park such vehicles indoors or near structures.

34. Within the time period of any applicable statutes of limitation, Plaintiff and members of the Class could not have discovered through the exercise of reasonable diligence that VW-Audi was concealing the conduct complained of herein and misrepresenting the seriousness of the defect posed.

35. Plaintiffs and the other Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that their Class Vehicles contained a serious safety defect putting such vehicles at risk of fire.

36. For these reasons, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled with respect to claims as to the Class Vehicles.

## CLASS ACTION ALLEGATIONS

**A. The Class**

37. Plaintiff brings this case as a class action on behalf of a nationwide class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

> **Nationwide Class:** All persons or entities in the United States who bought or leased a Class Vehicle (the "Nationwide Class").

38. Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiff seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class:

> **New Jersey Class:** All persons or entities in the state of New Jersey who bought or leased a Class Vehicle (the "New Jersey Sub-Class").

39. Defendants and their employees or agents are excluded from the Class.

### B. Numerosity

40. Upon information and belief, each of the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time (VW-Audi reports that nationwide 342,867 vehicles are affected), such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that hundreds of thousands of the Class Vehicles have been sold and leased.

### C. Common Questions of Law and Fact

41. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether the Class Vehicles were sold or leased with defective coolant pumps that could malfunction and cause fire;

   b. Whether Defendants knew about the above-described defect but failed to disclose the full extent of the problem and its consequences to its customers;

   c. Whether Defendants breached implied warranties and the Magnuson-Moss Warranty Act when they sold or leased vehicles equipped with defective coolant pump;

   d. Whether Defendants are liable for damages, and the amount of such damages;

   e. Whether Defendants should be required to disclose the full severity of the defect and instruct the Class Vehicles owners and lessees to stop driving their vehicles; and

      f.   Whether Plaintiff and class members are entitled to equitable relief including injunctive relief.

### D. Typicality

42. The Plaintiff's claims are typical of the claims of the Classes since Plaintiff purchased a defective Class Vehicle, as did each member of the Classes. Furthermore, Plaintiff and all members of the Classes sustained economic injuries arising out of Defendants' wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

### E. Protecting the Interests of the Class Members

43. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

### F. Proceeding Via Class Action is Superior and Advisable

44. A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far

fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Classes can be readily identified and notified based on, inter alia, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

45.   Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## FIRST COUNT
### Violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*
### (On Behalf of the Nationwide Class or, in the Alternative, the New Jersey Sub-Class)

46.   The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

47.   The New Jersey's Consumer Fraud Act ("NJCFA") protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

48.   Plaintiff and Class Members are consumers who purchased and/or leased the Class Vehicles for personal, family or household use.

49.   Defendants engaged in unlawful conduct by deliberately and knowingly engaging in misrepresentations and false statements regarding the Class Vehicles, in the course of Defendants' business.  Specifically, Defendants know that the Class Vehicles contain a serious safety defect and are at risk of fire, yet Defendants continue to instruct their dealers to inform consumers that they can continue to drive their vehicles normally.

50. It is also unconscionable for Defendants to withhold a repair from the Class Vehicles owners and lessees by not making a replacement part available when Defendants know that the Class Vehicles contain a serious safety defect and are at risk of fire.

51. It is unconscionable of Defendants not to make loaner vehicles available to the Class Vehicles owners and lessees until their vehicles are repaired, as such vehicles contain a serious safety defect and are at risk of fire.

52. Defendants have also engaged in unlawful conduct by willfully and knowingly suppressing and/or omitting information related to the Class Vehicles to consumers. Specifically, Defendants purposefully and knowingly failed to disclose the seriousness of the coolant pump defect to consumers where, on one hand, Defendants instructed their authorized dealers to stop all sales of the Class Vehicles and to quarantine their inventory of Class Vehicles until the 19N3/19N4 recall is implemented, while on the other hand Defendants instruct their dealers to inform consumers that they can continue to drive their vehicles normally.

53. Defendants did not fully and truthfully disclose to their customers the true nature of the coolant pump defect in the Class Vehicles, said defects not being readily discoverable at the time of purchase or lease.

54. Defendants intended that Plaintiff and the Class Members rely on their misrepresentation and/or acts of concealment and omission, so that they would purchase and/or lease the Class Vehicles.

55. Accordingly, Defendants have engaged in unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent to not sell them as

advertised; and otherwise engaging in conduct likely to deceive. Further, Defendants' acts and practices described herein offend established public policy because of the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Defendants fraudulently concealed the defective nature of the Class Vehicles from consumers.

56. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

57. By engaging in the above-described practice and the actions and omissions herein alleged, Defendants have committed one or more unlawful acts in violation of the NJCFA.

58. Defendants' conduct caused Plaintiff and Class Members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiff and the Class Members have suffered an ascertainable loss in that they received less than what was promised to them by Defendants at the time they purchased and/or leased the subject Class Vehicles. Plaintiff and the Class Members will suffer future damages due to the loss in value of the vehicles as a result of the coolant pump defect. Therefore, Plaintiff and the Class Members are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

59. A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class Members. Had the defective vehicle design in the Class Vehicles been disclosed, Plaintiff and the Class Members would not have purchased them or would have paid less for the Class Vehicles had they decided to purchase them.

60. Plaintiff and the Class Members have suffered an ascertainable loss of monies and pursuant to NJ Stat. § 56:8-19 are entitled to threefold damages.

61. Unless Defendants are enjoined from continuing to engage in this business practice, Plaintiff and the Class Members will continue to be injured by Defendants' wrongful actions and conduct. Therefore, Plaintiffs and the Class Members are entitled to injunctive relief.

62. Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiff has served the New Jersey Attorney General with a copy of this Complaint.

## SECOND COUNT
### Breach of Warranty Pursuant to the Magnusson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*
### (On Behalf of the Nationwide Class or, in the Alternative, the New Jersey Sub-Class)

63. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

64. The Plaintiff and each class member is a "consumer" as defined in 15 U.S.C. § 2301(3).

65. Each Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

66. The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6). 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the implied warranties.

67. 15 U.S.C. § 2304(a)(1) requires Defendants, as a warrantors, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiff and class members.

68. The Defendants' failure to repair the Class Vehicles' defective coolant pumps constitutes a breach of the implied warranties applicable to the Class Vehicles.

69. Despite the demands, Defendants have failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the implied warranties applicable to the Class Vehicles.

70. As a result of Defendants' breaches of the implied warranties, and Defendants' failure to remedy the same within a reasonable time, Plaintiff and class members have suffered damages.

### THIRD COUNT
### (Breach of Implied Warranty)

71. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. VW-Audi marketed and placed the Class Vehicles into the stream of commerce with the intent they be purchased by Plaintiff and Class Members.

73. VW-Audi is a "merchant" for purposes of the Uniform Commercial Code because they regularly sell consumer automobiles of this kind.

74. As a result of the coolant pump defect, the Class Vehicles were defective and not of merchantable quality when they left VW-Audi's control.

75. Plaintiff and Class Members used their Class Vehicles for the ordinary purpose that consumer automobiles are used – to reliably, comfortably, and safely transport passengers and belongings for personal, family, or household purposes.

76. Despite Plaintiff's and Class Members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of fair

and average quality, and would not pass without objection in the consumer automotive industry at the time of sale.

77. VW-Audi breached the implied warranty of merchantability with respect to the Class Vehicles by failing to replace such defective coolant pumps that place the vehicle at risk of fire.

78. VW-Audi has been given a reasonable opportunity to cure its breach of the implied warranty of merchantability and/or Plaintiff and Class Members were not required to present their vehicles for repair as such an opportunity would be futile by reason of unavailability of replacement parts.

79. VW-Audi have known about the coolant pump defect at least since December of 2016,a s well as from customer complaints, service information, and warranty data and has failed to conform the Class Vehicles to a minimum standard of quality.

80. As a direct and proximate result of VW-Audi's breach of the implied warranty of merchantability, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

81. Plaintiff, individually, and on behalf of the Nationwide or State Class, seeks all damages permitted by law, including compensation for the monetary difference between the Class Vehicles as warranted and as sold; compensation for the reduction in resale value; compensation for out-of-pocket repairs and service; towing and rental charges incurred as a result of the Class Vehicles' breakdowns; the cost of purchasing, leasing, or renting replacement vehicles; along with all other incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendants as follows:

(a) An order certifying the proposed Class and Sub-Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b) Award damages, including compensatory and exemplary damages, to Plaintiff and all other Class Members;

(c) Award Plaintiff and Class Members actual damages sustained;

(d) Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the defect;

(e) Award Plaintiff and Class Members punitive damages;

(f) Reasonable attorneys' fees and costs; and

(g) Such other and further relief as this Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: September 5, 2018

                              Respectfully submitted,

                              By  /s/ Sofia Balile
                                  Sofia Balile, Esq.
                                  LEMBERG LAW, LLC
                                  43 Danbury Road

Wilton, CT 06897
Phone: (917) 981-0849
Fax:  (203) 653-3424
*Attorneys for Plaintiff*