# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Scott D. Sager, Edward Young, Renada Hall, Michael Marcotte, Sharon Scott, Jack Whittington, Carmelita Nunez, *on behalf of themselves and all others similarly situated*,<br><br>         Plaintiffs,<br>         vs.<br><br>Volkswagen Group of America, Inc. and Audi of America, Inc.,<br><br>         Defendants. | Civil Action No.: 2:18-cv-13556 (ES) (SCM)<br><br>**ELECTRONICALLY FILED**<br><br>**ORAL ARGUMENT REQUESTED** |

# DEFENDANT'S MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS AND IN SUPPORT OF FINAL APPROVAL OF THE <u>PROPOSED CLASS SETTLEMENT</u>

# **TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ............................................................................ 1

LEGAL STANDARD............................................................................................ 2

I.     THE SETTLEMENT IS FAIR, REASONABLE, AND
       ADEQUATE AND SHOULD BE APPROVED. ......................................... 4

II.    THE OVERWHELMING APPROVAL BY CLASS
       MEMBERS WEIGHS IN FAVOR OF THE SETTLEMENT'S
       FINAL APPROVAL. ................................................................................ 10

III.   THE FEW OBJECTIONS TO THE SETTLEMENT LACK
       MERIT AND/OR FAIL TO COMPLY WITH THE COURT'S
       DIRECTIVES.  THEY SHOULD BE OVERRULED. .............................. 11

       A.     THE THREE OBJECTIONS TO THE PARAMETERS OF THE
              TURBOCHARGER WARRANTY EXTENSION SHOULD BE
              OVERRULED.................................................................................12

       B.     OBJECTIONS TO THE SETTLEMENT'S REIMBURSEMENT
              LIMIT FOR NON-DEALER REPAIRS LACK MERIT. ..................17

       C.     THE WILINSKI OBJECTION WAS BASED ON A
              MISUNDERSTANDING AND HAS BEEN WITHDRAWN...........20

IV.    SEVERAL OF THE OPT-OUT REQUESTS DO NOT
       COMPLY WITH ONE OR MORE OF THE COURT'S
       REQUIREMENTS FOR A VALID REQUEST FOR
       EXCLUSION............................................................................................ 21

CONCLUSION .................................................................................................... 24

## Table of Authorities

**Page(s)**

**Cases**

*Demmick v. Cellco Partnership*,
2015 WL 13643682 (D.N.J. May 1, 2015).........................................................14

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ................................................................................3

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) .......................................................................3, 4, 14

*Henderson v. Volvo Cars of North America*,
2013 WL 1192479 (D.N.J. March 22, 2013).....................................................13

*In re Baby Products Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ................................................................................2

*In re Cendant Corp. Sec. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..............................................................................10

*In re GMC Pick-Up Fuel Tank Prods. Liab. Litig. ("GM Trucks")*,
55 F.3d 768 (3rd Cir. 1995) .............................................................................3, 4

*In re Lucent Techs., Inc. Sec. Litig.*,
307 F. Supp. 2d 633 (D.N.J. 2004)....................................................................11

*In re New Jersey Tax Sales Certificates Antitrust Litig.*,
2018 WL 4232057 (3d Cir. Sept. 6, 2018) ...................................................2, 11

*In re Par Pharmaceuticals Securities Litigation*,
2013 WL 3930091 (D.N.J. July 29, 2013) ........................................................14

*In re Warfarin Sodium II Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ..............................................................................14

*Myers v. Medquist, Inc.*,
2009 WL 900787 (D.N.J. Mar. 31, 2009) .........................................................11

*National Football League Players Concussion Injury Litigation*,
821 F.3d 410 (3d Cir. 2016) ..............................................................................14

*Nyby v. Convergent Outsourcing, Inc.*,
2017 WL 3315264 (D.N.J. August 3, 2017) ......................................................12

*Oliver v. BMW of North America, LLC*,
2021 WL 870662 (D.N.J. March 8, 2021).........................................................13

*Schwartz v. Avis Rent a Car System*,
2016 WL 3457160 (D.N.J. June 21, 2016).........................................................14

*Skeen v. BMW of North America, LLC*,
2016 WL 4033969 (D.N.J. July 26, 2016) ...........................................................2

*Stoetzner v. U.S. Steel Corp.*,
897 F.2d 115 (3d Cir. 1990) ..............................................................................10

*Sullivan v. DB Invs.*,
667 F.3d 273 (3d Cir. 2011) (*en banc*) ...............................................................3

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ...................................................................3, 11, 12

*Weiss v. Mercedes-Benz of N. Am.*,
899 F. Supp. 1297 (D.N.J. 1995).......................................................................11

*Yaeger v. Subaru of Am., Inc.*,
2016 WL 4541861 (D.N.J. Aug. 31, 2016) ..................................................13, 19

## Other Authorities

Fed. R. Civ. P. 23 ....................................................................................5, 9, 24

Fed. R. Civ. P. 23(e)..................................................................................15

Fed. R. Civ. P. 23(e)(2)...............................................................................3

## PRELIMINARY STATEMENT

Defendant Volkswagen Group of America, Inc.[1] ("VWGoA" or "Defendant") respectfully submits this Memorandum of Law in response to objections and in support of final approval of the proposed Settlement.

Significantly, of the 608,221 Class notices transmitted to 587,849 Class Members,[2] only <u>5</u> persons (<u>0.001</u>% of the Settlement Class) currently object to the proposed Settlement, and only <u>42</u> Class Members (<u>0.007</u>% of the Settlement Class) have submitted requests for exclusion from the Settlement to the Claim Administrator.  That means an overwhelming <u>99.992</u>% of the Settlement Class favor the proposed Settlement.[3]  The very few objections filed do not, in number or in substance, warrant rejection or modification of the proposed Settlement.  Defendant respectfully submits that the arm's length Settlement of this vigorously disputed class action is fair, reasonable, and adequate, and therefore supports Plaintiffs'

---

[1] Audi of America, Inc. is not a separate entity.  It is an operating unit of Volkswagen Group of America, Inc.

[2] *See* Decl. of Cameron R. Azari, Esq., Senior Vice President of Epiq Class Action & Claims Solutions, Inc. ("Azari Decl."), ¶¶ 18-22, 28-29, ECF 81-2.

[3] And, of the 42 opt-out requests, 16 of them have indicated that they seek exclusion not because of any complaint about the Settlement, but because they have no complaint about their Settlement Class Vehicle and/or do not seek any relief.  *See* the exclusion requests of Kevin and Debra Celuch, Gayle M. Plevyak, Deborah L. Davidson, Cathy L. Carr, Judith B. Womble, Maria Molina, Valerie M. Lee-Block, Anna Christina Morales Hagedon, Hank Pace, Karen Caudle, David Hunt, Randal Lamar Jordan, Ann Tinkle, Denise Meraz, Rose Ross, and Mark D. Sorrill, annexed hereto as Exhibit A.

Motion for Final Approval of the Parties' Class Action Settlement (filed May 31, 2021), ECF No. 81. For the reasons demonstrated below, the objections should be overruled, and the Court should grant final approval of the Settlement.

## LEGAL STANDARD

Several well-settled principles govern the evaluation of this proposed Settlement in this Circuit. First, courts recognize that "[s]ettlements…reflect[] negotiated compromises. The role of a district court is not to determine whether the settlement is the fairest possible resolution [but only whether] the compromises reflected in the settlement…are fair, reasonable and adequate when considered from the perspective of the class as a whole." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173-74 (3d Cir. 2013) (citation omitted); *see also Skeen v. BMW of North America, LLC*, 2016 WL 4033969, at *7 (D.N.J. July 26, 2016) ("[T]he Third Circuit has guided that an important consideration is 'the degree of direct benefit provided to the class'") (quoting *In re Baby Products*, 708 F.3d at 174). As the Third Circuit recently reaffirmed, "an evaluating court must…guard against demanding too large a settlement since, after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re New Jersey Tax Sales Certificates Antitrust Litig.*, 2018 WL 4232057, at *5 (3d Cir. Sept. 6, 2018) (internal quotation marks and citation omitted).

Second, there is a strong judicial policy in favor of resolution of litigation before trial, "particularly in class actions and other complex cases where substantial

judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Fuel Tank Prods. Liab. Litig. ("GM Trucks")*, 55 F.3d 768 (3rd Cir. 1995). The benefits of class action settlement accrue to the parties as well as the courts:

> The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. . . . Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010).

Third, class settlements enjoy a presumption that they are fair and reasonable when, as in this action, they are the product of arm's length negotiations conducted by counsel who are skilled and experienced in class action litigation. *See, e.g., GM Trucks*, 55 F.3d at 785; *Sullivan v. DB Invs.*, 667 F.3d 273, 320 (3d Cir. 2011) (*en banc*); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) (Linares, J.) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness.").

And fourth, class action settlements should be approved if the district court finds "that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit has identified nine factors—known as the *Girsh* factors—that bear on this analysis: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing

liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *GM Trucks*, 55 F.3d at 785-86 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). As shown below and in Class Counsel's Motion for Final Approval, the proposed Settlement meets these factors and, accordingly, should be finally approved.

**I.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED.**

The proposed settlement of this action is the product of extensive arm's length negotiation of disputed claims among highly experienced class action counsel on each side. The experienced, highly-respected, neutral mediator, Bradley Winters, Esq. of JAMS, also assisted with these negotiations. Plaintiffs allege that the Settlement Class Vehicles contain defective Electric (After-Run) Coolant Pumps ("Coolant Pumps") that were not adequately addressed by recalls. Defendant disputes Plaintiffs' claims that any warranties were breached or that any applicable consumer statutes were violated. Defendant also maintains that the applicable recall campaigns and service action properly and adequately remedied the potential issue in the Coolant Pumps free of charge, and provided benefits to the Settlement Class Members that should be deemed to prudentially moot this putative class action.

For these and other reasons, Defendant submits that if this case were to proceed through litigation and trial, the Settlement Class Members herein would bear the appreciable risks of non-certification, non-recovery via summary judgment or trial, or at the very least, a substantially reduced or delayed recovery.

Conversely, the Settlement proposed herein provides significant benefits to the Settlement Class, and is eminently fair, reasonable, and adequate under Fed. R. Civ. P. 23 ("Rule 23"). Specifically, the proposed settlement provides the following substantial benefits:

1. <u>Extended Warranty</u>: The original New Vehicle Limited Warranties ("NVLW") for the Settlement Class vehicles provide coverage regarding the vehicle's turbocharger for 4 years or 50,000 miles, whichever occurs first, from the vehicle's In-Service Date. The Settlement Agreement provides an extension of the NVLWs applicable to Settlement Class Vehicles' turbochargers, over and above the NVLW coverage period and any extended warranty period provided by Recall 19N4, to cover repair or replacement, by an authorized Audi dealer, of a failed turbocharger. *See* ECF 61-3, Settlement Agreement, § II(A).

There are 342,866 Settlement Class Vehicles. With respect to the turbocharger warranty extension, the vehicles fall within several categories depending upon whether, and which, recalls and service campaigns were performed on the particular vehicle. Some, for example, have had a software update that would

shut off the Coolant Pump in the event it became blocked, pursuant to Recall 19M1. Others had the Coolant Pump shut off entirely, pursuant to Recall 19N4. And others had the Coolant Pump replaced, either with or without having it previously shut off, pursuant to either Recall 19O2 or Service Action 19N8. Finally, some vehicles might have not yet had the Coolant Pump addressed by any recall or service action. Accordingly, the Settlement provides four categories of turbocharger warranty extensions, each of which affords either a benefit that was never previously afforded or a further benefit added onto what was previously afforded:

Category 1: For those Settlement Class Vehicles that have had no recall performed, or have only had Recall 19M1(the software update) performed prior to the Notice Date, the duration of the Settlement turbocharger warranty extension is 14-months from the Notice Date or 9-months from the date the original NVLW period for the turbocharger expires. If, however, Recall 19O2 is performed (replacement of the Coolant Pump) on the Settlement Class Vehicle within 120 days after the Notice Date, then the duration of the turbocharger warranty extension will be the greater of 14-months from the date Recall 19O2 was performed on the Settlement Class Vehicle or 9-months from the date the original NVLW period for the turbocharger expires.

Category 2: For those Settlement Class Vehicles that have had Recall 19N4 (disconnection of the Coolant Pump) performed prior to the Notice Date, in addition

to the 4-year turbocharger warranty extension that was provided as part of Recall 19N4, the Settlement affords an extra 14-month turbocharger warranty extension, for a total warranty extension of 5 years and 2 months, measured from the date when Recall 19N4 was performed.  This turbocharger warranty extension will continue to apply even if Service Action 19N8 (replacement of the Coolant Pump) was or is subsequently performed on Settlement Class Vehicle.

Category 3: For those Settlement Class Vehicles that have had Recall 19O2 (replacement of the Coolant Pump) performed prior to the Notice Date, the duration of the Settlement turbocharger warranty extension is the greater of 14-months from the date Recall 19O2 was performed or 9-months from the date the original NVLW period for the turbocharger expires.

Category 4: For those Settlement Class Vehicles that have had their Coolant Pump repaired or replaced prior to the Notice date, but not under any recall or service action, the Settlement turbocharger warranty extension is 14-months from the Notice Date or 9-months from the date the original NVLW period for the turbocharger expires, provided the damage to or failure of the turbocharger was not caused by improper repair or use of a non-Audi replacement coolant pump by a service facility that is not an authorized Audi dealer.  If, however, the Coolant Pump replacement of Recall 19O2 is performed within 120-days after the Notice Date, then the duration of the turbocharger warranty extension will be the greater of 14-months from the

date Recall 19O2 was performed or 9-months from the date the Settlement Class Vehicle's original NVLW period for the turbocharger expires.

As delineated in the Settlement Agreement (ECF 61-3), the Class Notice (ECF 81-2, Attachment 3) and Plaintiffs' Motion for Final Approval (ECF 81-1), the Settlement provides the criteria for determining which category each Settlement Class Vehicle falls into, and a corresponding turbocharger warranty extension of 9-14 months.  The extended warranty is subject to the same terms and conditions of the original NVLW, and is transferrable to subsequent owners to the extent the time and mileage period of the extended warranty has not expired.

2.    <u>Reimbursement for Past Coolant Pump Repair/Replacement</u>:    In addition to the turbocharger warranty extension, and subject to reasonable proof requirements, the Settlement provides for (a) 100% reimbursement of past out-of-pocket expenses paid for repair or replacement of the Coolant Pump performed at an authorized Audi dealer prior to the Date of Commencement of Recall 19N4 on September 14, 2018, and (b) 100% reimbursement of such past paid out-of-pocket expenses up to a maximum of $542.00 if a Settlement Class Member paid out of pocket for such Coolant Pump repair or replacement at a service facility that is not an authorized Audi dealer.  *See* ECF 61-3, Settlement Agreement § II(B).  The $542.00 maximum or "cap" is very generous, as it is based upon the highest

confirmed parts and labor costs charged by authorized Audi dealerships in the most expensive market in the U.S.

3.    <u>Reimbursement for Past Rental Car</u>:  In addition, Settlement Class Members that submit qualifying and timely claims are also entitled to reimbursement of out-of-pocket rental car expense for one day, incurred while Recall 19O2 (the Coolant Pump replacement) was performed at an authorized Audi dealer that was unable to provide a free loaner vehicle that was requested.  *See* ECF 61-3, Settlement Agreement § II(C).

These robust Settlement benefits are subject to reasonable proof requirements, terms and conditions.  Significantly, the Settlement does not contain any overall aggregate monetary cap.  Furthermore, under the settlement VWGoA will bear the cost of the class notice, claims administration, and approved reasonable attorneys' fees and expenses up to the maximum amount agreed by the Parties.

This Settlement is clearly fair, reasonable, and adequate under Rule 23.  In view of the substantial benefits afforded to the Settlement Class, it is not surprising that <u>99.992</u>% of the Settlement Class Members have neither objected to, nor requested to be excluded from, this Settlement. Additionally, as discussed *infra*, the minuscule handful of objections to the Settlement are subjective in nature and lack merit for numerous substantive and procedural reasons.  These objectors could readily have opted out of the Settlement, and their few critiques ignore the overriding

recognition in our legal system that the essence of a settlement is compromise, and that no settlement is guaranteed to please everyone.

## II.   THE OVERWHELMING APPROVAL BY CLASS MEMBERS WEIGHS IN FAVOR OF THE SETTLEMENT'S FINAL APPROVAL.

As indicated, the Class's reaction to the Settlement has been overwhelmingly positive.   Out of 587,849 Settlement Class Members, there have been only 8 objections (representing 0.001% of the Class) and only 42 requests for exclusion[4] (representing 0.007% of the Class).   *See* ECF 81-2, Azari Decl. ¶¶ 28-29; ECF 81-3, Taylor Decl. ¶¶ 4-5.   As explained below, 3 of the objections have been withdrawn.[5]

Such an overwhelmingly positive response from the Class strongly favors final approval.   *See*, *e.g.*, *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001) (affirming trial court decision that class reaction was "extremely favorable," where 478,000 notices were sent, four objections were made, and 234 class members opted out); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors

---

[4] Opt-out requests were submitted to the Claim Administrator by Ginn, Sells, Lee-Block, Rossi, Cobb, Carnegie, Hagedorn, Davidson, King, Caudle, Mulkern, Warren, Hunt, McMillan, Keaney, Sorrill, Pace, Penn, Schumacher, Flagg, Harman, Haynie, Wright, Molina, Oppersdorff, Bartlett, Seldat, Hansen, Hyde, Tardelli, Pattrin, Jordan, Ross, Tinkle, King, Celuch, Carr, Saraczyn, Plevyak, Gutierrez, Meraz, Womble.   *See* Azari Decl., ¶ 28 and Attachment 4 thereto.

[5] The Wilinski, Bacchetti and Eisnor objections have been withdrawn.   *See* ECF 81-3, Taylor Decl. ¶ 6 and Exhibit I thereto; *see also* Exhibits B and C hereto.

settlement"); *Varacallo,* 226 F.R.D. at 237 (exclusions amounting to about .06% of the class, and objections amounting to about .003% of the class constituted "extremely low" numbers that "weighed in favor of approving" the proposed settlement); *In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 643 (D.N.J. 2004) ("Courts [have] construe[d] class member's failure to object to proposed settlement terms as evidence that the settlement is fair and reasonable."); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (100 objections out of 30,000 class members weighs in favor of settlement); *Myers v. Medquist, Inc.*, 2009 WL 900787, *12 (D.N.J. Mar. 31, 2009) (noting that based on the low number of objectors and opt-outs, the court was "justified in assuming more than 98% of the Class Members" approved the settlement).

### III.   THE FEW OBJECTIONS TO THE SETTLEMENT LACK MERIT AND/OR FAIL TO COMPLY WITH THE COURT'S DIRECTIVES. THEY SHOULD BE OVERRULED.

The objections, most of which do not comply with the Court's directives, essentially boil down to a few persons' subjective complaints about the sufficiency of certain aspects of the Settlement benefits and/or are based upon incorrect assumptions.  As demonstrated below and in Plaintiffs' Motion for Final Approval, the objections lack merit, substantively and procedurally, and should be overruled.

The Third Circuit has repeatedly rejected the notion "that a settlement cannot be reasonable if it constitutes a certain percentage of the best possible recovery." *See In re New Jersey Tax Sales Certificates Antitrust Litig.*, 2018 WL 4232057, at

11

*5. Instead, as held in this District, "[t]his Court's role is to determine whether the proposed relief is fair, reasonable and adequate, not whether some other relief would be more lucrative to the Class." *Varacallo*, 226 F.R.D. at 242. Similarly, this Court has found that a class settlement that represents only a "fraction of the potential recovery" if the putative class action survived motion practice, trial, and appellate review, does not, standing alone, justify concluding that the settlement is "grossly inadequate and should be disapproved." *Nyby v. Convergent Outsourcing, Inc.*, 2017 WL 3315264, at *9 (D.N.J. August 3, 2017) (Salas, J.) (citation omitted).

A.    **THE THREE OBJECTIONS TO THE PARAMETERS OF THE TURBOCHARGER WARRANTY EXTENSION SHOULD BE OVERRULED.**

<u>Rahinesky and Samadi Objections</u>

Objectors Rahinesky and Samadi complain that the length of the turbocharger extended warranty should be longer. *See* ECF 81-3, Taylor Decl., Exhibits A & B. Their objections are vague as to particulars and do not offer any rationale or support for the objection other than these few persons' subjective feelings. In addition, they do not specify whether their vehicles' Coolant Pumps were ever shut off and/or replaced pursuant to the available recalls and service campaign, and neither of these objectors claim to have experienced any issues affecting their vehicles' Coolant Pumps or turbochargers. Finally, the objections ignore the other benefits that this Settlement provides.

These types of generalized and subjective complaints that a warranty extension should be more, are routinely rejected by courts and do not constitute a legitimate ground for denial of final approval. *Oliver v. BMW of North America, LLC*, 2021 WL 870662, at *5 (D.N.J. March 8, 2021) (*citing Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at *17 (D.N.J. Aug. 31, 2016)) (in approving automotive class settlement involving a warranty extension, court recognized "that a line must be drawn somewhere and that is generally left to the good faith negotiation of the parties"); *Henderson v. Volvo Cars of North America*, 2013 WL 1192479 (D.N.J. March 22, 2013) (in approving automotive class settlement involving a warranty extension, court rejected objections that the warranty extension should have been greater and held that those objecting to the sufficiency of relief had the option of opting out of the settlement and pursuing individual claims against defendant).

Here, the turbocharger warranty extension is reasonable, affords significant benefits to the Settlement Class, and resulted from extensive arm's length negotiations among experienced class action attorneys, with the assistance of an experienced and respected neutral mediator.

Additionally, as this Court has previously noted in rejecting similar objections, "[n]one of the objectors have disputed that settling the class action[] would enable the parties to avoid a lengthy, expensive, and complex trial.

13

Importantly, of course, the settlement also provides the Class with immediate and definite relief." *Schwartz v. Avis Rent a Car System*, 2016 WL 3457160, at *7 (D.N.J. June 21, 2016); *see also National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 438 (3d Cir. 2016) (avoiding the "enormous undertaking" of litigation, "extensive discovery," and individual trials weigh in favor of settlement).

Indeed, as in this action, the *Girsh* test "weighs in favor of approval where 'continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial.'" *In re Par Pharmaceuticals Securities Litigation*, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013) (Salas, J.) (quoting *In re Warfarin Sodium II Antitrust Litig.,* 391 F.3d 516, 536 (3d Cir. 2004)). *See also*, *In re Par Pharmaceuticals*, 2013 WL 3930091, at *5-7 (this Court found that settlement of a class action was appropriate because it allowed plaintiffs to avoid the burden of proving liability and damages, both of which defendant contested, at trial); *Demmick v. Cellco Partnership*, 2015 WL 13643682, at *10 (D.N.J. May 1, 2015) (explaining that the value of the parties' agreed-upon settlement lies not only in securing a recovery for the class, but also in "eliminating ***all*** of the significant risks in th[e] case related to liability, class certification and damages") (original emphasis).

14

Accordingly, the Rahinesky and Samadi objections lack substantive merit and should be overruled. The objections should also be overruled because they fail to comply with the objection requirements set forth in the Preliminary Approval Order (ECF 69, ¶¶ 20(c), 20(f) and 23) and further recited in the Class Notice that these objectors received (ECF 81-2, Azari Decl., Attachment 3). Pursuant to the Preliminary Approval Order, each objection was required to contain "the model, model year and Vehicle Identification Number of the Settlement Class Vehicle, along with proof that the objector has owned or leased the Settlement Class Vehicle (i.e., a true copy of a vehicle title, registration, or license receipt)." ECF 69, ¶ 20(c). These requirements are particularly significant as an objector who has not established membership in the Settlement Class has no standing to object. *See* Fed. R. Civ. P. 23(e) (only a "class member" may object to a proposed class settlement). The Rahinesky and Samadi objections do not contain this essential required information and proof.

In addition, the Preliminary Approval Order requires each objector to provide "a list of all other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court in the United States in the previous five years, including the full case name with jurisdiction in which it was filed and the docket number. If the Settlement Class Member or his, her or its counsel has not objected to any other class action settlement in the United States in

the previous five years, he/she/it shall affirmatively so state in the objection." ECF 69, ¶ 20(f).  The Rahinesky and Samadi objections also fail to provide this required information.

Bacchetti Objection

At the outset, the Bacchettis' complaints (ECF 81-3, Taylor Decl., Exhibit E) have amicably been resolved, to their satisfaction, for their expenses in the interest of good customer relations.  The Bacchettis have, accordingly, withdrawn their objection (see Exhibit B attached hereto), and we respectfully request that the Court approve this resolution and withdrawal of the objection.

We note that the Bacchetti objection lacks merit in any event.  They subjectively complain that the extended warranty does not enable them to have a covered turbocharger repair performed at service facilities that are not Audi dealerships.  However, this is an extension of the original NVLW for their vehicle, which requires that any turbocharger warranty repair be performed by an authorized Audi dealer.  In addition, any turbocharger repair covered by the extended warranty will, like the original warranty, be performed free of charge, so there is no legitimate basis to complain.

The Bacchettis also claim that they did not receive notice of a potential turbocharger issue in their 2013 Audi A5 vehicle, and, as a result, when their turbocharger needed replacement beyond the original NVLW coverage period, they

16

had to have their turbocharger repaired by a non-dealer service facility.  This also lacks merit because the Bacchettis' vehicle did not have its Coolant Pump disconnected pursuant to Recall 19N4.  Rather, VWGoA records confirm that the Bacchetti vehicle first had the Coolant Pump software update performed pursuant to Recall 19M1 on February 15, 2017, and then had the Coolant Pump replaced pursuant to Recall 19O2 on January 14, 2019.  All of this was done free of charge by an Audi dealer.  Thus, because the Bacchetti vehicle's Coolant Pump was not disconnected, their turbocharger was not affected by the potential Coolant Pump issue, and therefore there was nothing to inform them of regarding their turbocharger.

## B. OBJECTIONS TO THE SETTLEMENT'S REIMBURSEMENT LIMIT FOR NON-DEALER REPAIRS LACK MERIT.

Objectors Eisnor and Williams subjectively, without any rationale or evidence, complain that the $542.00 reimbursement cap for repairs conducted at service facilities that are not authorized Audi dealerships should be higher.  *See* ECF 81-3, Taylor Decl., Exhibits C & D.  Ms. Eisnor's objection has been withdrawn, subject to the Court's approval, and the objection lacks merit in any event.

<u>Eisnor Objection</u>

Ms. Eisnor complains that, because she paid $1,083.63 to have her 2016 Audi Q5 vehicle's *"Water Pump Aluminum"* and intake manifold gasket replaced by a service facility that was not an authorized Audi dealer, the $542.00 cap on

reimbursement for replacing the *Coolant Pump* is too low.  *See* ECF 81-3, Taylor Decl., Exhibit D.  Ms. Eisner's complaint is mistaken because it is based upon an entirely different pump, the "water pump aluminum," which is ***not*** the Electric (After-Run) Coolant Pump at issue in this litigation and Settlement.  *See* ECF 81-3, Taylor Decl., Exhibit D.  In fact, the documentation she submitted confirms that her vehicle's Coolant Pump was replaced, free of charge pursuant to Recall 19O2, by an authorized Audi dealer on March 4, 2019.  *Id*.  Ms. Eisnor's complaint is, therefore, unrelated to this action and has amicably been resolved, to her satisfaction, for her expenses in the interest of good customer relations.  Ms. Eisnor has, accordingly, withdrawn her objection (see Exhibit C attached hereto), and we respectfully request that the Court approve this resolution and withdrawal of the objection.

The Eisnor objection is, in any event, without merit for the above reason.  In addition, the reimbursement cap of $542.00 for non-dealer Coolant Pump replacements is not only reasonable, but very generous since it is based upon the highest hourly labor rate charged by any authorized Audi dealership in the U.S. Thus, the $542.00 cap is fair, reasonable and adequate.

<u>Williams Objection</u>

Mr. Williams also complains about the $542.00 reimbursement cap for non-dealer repairs, without any rationale or support, and based upon specific repairs that were made to his vehicle which, as discussed below, have nothing to do with the

Coolant Pump at issue in this action.  *See* ECF 81-3, Taylor Decl., Exhibit C.  The objection lacks merit and should be overruled.

As explained above, the $542.00 cap is based upon the retail price charged by an authorized Audi dealership to replace the Coolant Pump (parts and labor), generously using the highest hourly labor rate charged by authorized Audi dealerships in the country.  This is clearly fair, reasonable, and adequate, and "for those in aggravated situations there was the opportunity to opt out of this class and to pursue one's own remedies."  *Yaeger*, 2016 WL 4541861, at *17.  Mr. Williams had ample opportunity to opt out, and he chose not to.  His subjective objection not only lacks any support, but comprises one of only two such objections to the cap for non-dealer repairs out of 587,849 Settlement Class Members.

Mr. Williams' objection is also based primarily upon the fact that he claims to have paid $13,028 for several repairs to his vehicle's engine and other major components.  *See* ECF 81-3, Taylor Decl., Exhibit C.  However, none of those repairs included, or were caused by, the Electric (After Run) Coolant Pump at issue in this case.  Instead, they involved a completely different pump - a "water pump aluminum," explained *supra*.

Additionally, Mr. Williams' letter of objection states, without supporting evidence, that his extensive repairs, which included the engine, turbocharger with exhaust manifold, intake manifold, water pump aluminum and fuel injectors,

occurred because his vehicle had gone into "limp mode."  However, neither a malfunctioning Electric (After-Run) Coolant Pump, nor a malfunctioning turbocharger, could cause an Audi vehicle to go into "limp mode."  And the role of the subject Coolant Pump is to cool the turbocharger, not the engine, so it cannot cause engine damage.[6]  Thus, Mr. Williams' objection lacks merit and should be overruled.

### C.  THE WILINSKI OBJECTION WAS BASED ON A MISUNDERSTANDING AND HAS BEEN WITHDRAWN.

As explained in Plaintiffs' Motion for Final Approval, the Wilinski objection was withdrawn after the Wilinskis realized that their impression, that the Coolant Pumps had not already been subject to a recall, was not correct.  *See* ECF 81-3, Taylor Decl., Exhibit H.  In fact, VWGoA records confirm that the Wilinskis previously had all of the applicable recalls (19M1, 19N4, 19O2) completed on their vehicle.  In addition, the Wilinskis' objection is deficient for failure to provide proof of ownership/lease of the vehicle, and failure to disclose whether and to what extent they have objected to any other class settlements in the past 5 years, as required by

---

[6] Since the Coolant Pump had nothing to do with Mr. Williams' vehicle's issues, there is no merit to his claim that an Audi dealer allegedly failed to inform him of the Coolant Pump recalls and that his Coolant Pump should have been disconnected. Nor is his objection accurate, since VWGoA's records confirm that prior to his visit with that dealer, Mr. Williams' vehicle's Coolant Pump had, in fact, been disconnected pursuant to Recall 19N4 by Audi Nashville on November 13, 2018 at 115,595 miles, and was subsequently replaced pursuant to Service Action 19N8 by Audi Nashville on December 2, 2019 at 128,715 miles.

the Preliminary Approval Order. *Id.* Thus, even if the objection had not been withdrawn, it clearly had no merit and would be overruled.

## IV. SEVERAL OF THE OPT-OUT REQUESTS DO NOT COMPLY WITH ONE OR MORE OF THE COURT'S REQUIREMENTS FOR A VALID REQUEST FOR EXCLUSION.

The Claim Administrator received 42 requests for exclusion (opt-outs). *See* ECF 81-2, Azari Decl., ¶ 28 & Attachment 4. In accordance with the Preliminary Approval Order entered on December 8, 2020 (ECF 69, ¶ 17) and the Class Notice (ECF 81-2, Azari Decl., Attachment 3), in order to properly and effectively opt out of the proposed settlement, Settlement Class Members were required to send requests for exclusion to the Claim Administrator by regular first-class mail, postmarked no later than May 12, 2021, and the request for exclusion must include all of the following information:

(a)    the full name, address and telephone number of the person or entity seeking to be excluded from the Settlement Class;

(b)    the model, model year, and VIN of the person's or entity's vehicle;

(c)    a statement that he/she/it is or was a present or former owner or lessee of the vehicle; and

(d)    a specific and unambiguous statement that he/she/it desires to be excluded from the Settlement Class.

The Court unequivocally directed in the Preliminary Approval Order that "[a]ny Settlement Class Member who fails to submit a timely and complete Request

for Exclusion sent to the proper address, shall remain in the Settlement Class and shall be subject to and bound by all determinations and judgments in the Action concerning the Settlement, including but not limited to the Release set forth in the Settlement Agreement." ECF 69, ¶ 18.

Of the 42 purported opt-out requests that have been timely received by the Claim Administrator, 6 do not comply with one or more of the requirements enumerated in the Preliminary Approval Order and Class Notice. Their deficiencies are as follows:

(1)  Tommie Ginn failed to provide a VIN of a Settlement Class Vehicle. The VIN that he provided has only 16 characters, whereas all VINs have 17 characters. A copy of his defective request for exclusion is annexed as Exhibit D.

(2)  Romeo Gutierrez failed to provide any VIN, failed to specify the model and model year of his vehicle, and failed to provide his telephone number. A copy of his defective request for exclusion is annexed as Exhibit E.

(3)  Richard Hansen provided a VIN that does not correspond to a Settlement Class Vehicle. In addition, Mr. Hansen did not identify the model of his alleged vehicle. A copy of his defective request for exclusion is annexed as Exhibit F.

(4)  Rose Ross failed to provide a VIN of a Settlement Class Vehicle. The VIN that she provided has only 16 characters, whereas all VINs for Settlement Class

Vehicles have 17 characters.  A copy of her defective request for exclusion is annexed as Exhibit G.

(5)   Mark Sorrill provided a VIN that does not correspond to a Settlement Class Vehicle.  In addition, he did not provide his telephone number.  A copy of his defective request for exclusion is annexed as Exhibit H.

(6)   Whitney Wing Oppersdorff and Anthony Oppersdorff provided a VIN of a vehicle that is not a Settlement Class Vehicle.  Thus, their request for exclusion is invalid because they are not Settlement Class Members.  A copy of their defective request for exclusion is annexed as Exhibit I.

These requests for exclusion do not comply with the Court's requirements and should be rejected.

In addition, two (2) additional exclusion requests submitted by Ernest W. Pierce III and Christine H. Page are defective because they were improperly sent to Defendants' counsel rather than to the Claim Administrator as required by the Preliminary Approval Order (ECF 69, ¶ 18) and Class Notice (ECF 81-2, Azari Decl., Attachment 3).  This is why the Claim Administrator's declaration lists 42, and not 44, requests for exclusion (ECF 81-2, Azari Decl., ¶ 28 & Attachment 4).  These defective exclusion requests (annexed as Exhibits J and K, respectively) should be rejected, since the Preliminary Approval Order mandated that: "Any Settlement Class Member who fails to submit a timely and complete Request for

Exclusion *sent to the proper address*, shall remain in the Settlement Class and shall be subject to and bound by all determinations and judgments in the Action concerning the Settlement, including but not limited to the Release set forth in the Settlement Agreement." (ECF No. 69, ¶ 18, emphasis added).

Accordingly, these requests for exclusion do not comply with the Court's directives and, therefore, should be rejected.

## CONCLUSION

For the foregoing reasons, the proposed Settlement is fair, reasonable, and adequate, and comports with Fed. R. Civ. P. 23.  This Court should enter an order and judgment overruling the objections, rejecting the requests for exclusion that failed to comply with the Court's opt-out requirements, and granting final approval of the Settlement under the terms set forth in the Settlement Agreement, together with such other relief as the Court deems just and proper.

Dated: June 7, 2021                          Respectfully submitted,


By: */s/ Homer B. Ramsey*
    Homer B. Ramsey (042661997)
    Michael B. Gallub (*pro hac vice*)
    HERZFELD & RUBIN, LLC
    354 Eisenhower Parkway
    Livingston, New Jersey 07039
    Telephone: (973) 535-8840

    *Attorneys for Defendant*